**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| TERRA LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| ADVOCATE AURORA HEALTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The Plaintiff TERRA LAWSON (hereinafter referred to as "LAWSON") and for her complaint against the Defendant ADVOCATE AURORA HEALTH, INC. (hereinafter referred to as "ADVOCATE") states:

**COUNT I –**
**Violation of Title VII of the Civil Rights Act of 1964,**
**as amended by the Civil Rights Act of 1991**

1.    This action is brought for damages sustained by LAWSON by reason of ADVOCATE's violation of her civil rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

2.    At all times relevant hereto, LAWSON was an is a citizen of the United States, is a resident of the Northern District of Illinois and is a gay female.

3.    At all times relevant hereto, ADVOCATE was a not-for-profit corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Downers Grove, Illinois.

1

4.      At all times relevant hereto, ADVOCATE operated ADVOCATE Lutheran General Hospital located in Park Ridge, Illinois where LAWSON was employed as a registered nurse (Nurse Clin II).

5.      At all times relevant hereto, ADVOCATE was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      Venue is appropriate in this Court pursuant to 28 USC §1391 since the complained of conduct occurred in this District.

8.      In or about September 7, 2009, LAWSON was hired by ADVOCATE to the position of registry or zero hours registered nurse.

9.      In March 2010, LAWSON transferred to Lutheran General Hospital as a registered nurse (Nurse Clin II) in the Emergency Department.

10.     Up to the time of her termination, she received favorable reviews and commendations concerning her performance from her superiors at ADVOCATE.

11.     At all times relevant hereto, it was the policy of ADVOCATE not to discriminate against an employee on the basis of his or her sex, including sexual orientation.

12.     Nevertheless, commencing in October, 2020, LAWSON was discriminated against because of her sexual orientation.

13.     At all times relevant hereto, ADVOCATE knew that LAWSON was gay.

2

14.    On or about October 2, 2020, LAWSON's fiancé brought coffee to her as she had done in the past on many occasions.

15.    Between the time that she walked into the Emergency Department and until she left, only fourteen minutes elapsed.

16.    While LAWSON's fiance was there, she sat at an unused and empty chair and they spoke briefly to LAWSON's team nurse, Jackie, and Dr. Chiganos about personal matters unrelated to anything connected with ADVOCATE.

17.    On October 6, 2020, before her shift began, LAWSON was called in by Roseann Neiss, Emergency Room Director.

18.    Ms. Neiss advised LAWSON that she allegedly received an anonymous complaint from the HIPAA Hotline stating that she had violated HIPAA rules and regulations.

19.    Ms. Neiss stated that this was a serious offense and there would have to be an investigation.

20.    LAWSON advised Ms. Neiss that whoever allegedly called in was mistaken and that she had not engaged in any HIPAA violation.

21.    Ms. Neiss related that there were several complaints being made from someone in the Emergency Department.

22.    LAWSON proceeded with her shift and spoke to Rachel Powers, her Assistant Care Manager.

23.    LAWSON advised Ms. Powers of the baseless claims being made against her.

3

24.    Ms. Powers related that LAWSON was a very good nurse and that she had a hard time believing that these accusations would be substantiated.

25.    Despite Ms. Powers' comments, on October 13, 2020, LAWSON was brought in Ms. Powers' office and Ms. Powers terminated her.

26.    Ms. Powers indicated that people who were higher up watched the video and the decision was made to fire LAWSON.

27.    The articulated reason offered by ADVOCATE for terminating LAWSON was nothing more than a pretext for the discrimination committed against her on the basis of her sexual orientation since she did not engage in any HIPAA violation on October 3, 2020 or on any other date while employed by ADVOCATE.

28.    The decision to terminate LAWSON was pretextual since there was no investigation conducted by ADVOCATE of what allegedly transpired on October 3, 2020 since there was no audio to the video in question and any person above Ms. Powers could not hear anything that LAWSON was discussing with her fiancé on October 3, 2020.

29.    Since LAWSON did not engage in any misconduct that would warrant her termination, ADVOCATE has, therefore, discriminated against her because of her national origin in violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e-2)(a)(1) as amended by the Civil Rights Act of 1991.

30.    On November 25, 2020, the Equal Employment Opportunity Commission received LAWSON' charge of discrimination.

4

31.     Pursuant to LAWSON's request, on April 9E mployment Opportunity Commission issued LAWSON a notice of right to sue. A true and correct copy of this notice is attached hereto as ***Exhibit A***.

32.     Less than ninety days have expired since LAWSON's receipt of this notice of right to sue.

33.     ADVOCATE's violation of LAWSON's rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 has caused LAWSON pecuniary damages.

WHEREFORE, the Plaintiff TERRA LAWSON requests that this Court enter judgment in his favor and against the Defendant ADVOCATE AURORA HEALTH, INC. as follows:

a.     Enjoining ADVOCATE from engaging in such unlawful employment practices as alleged in this complaint;

b.     Requiring ADVOCATE to reinstate LAWSON to her position at a rate of pay comparable to what she would have been receiving if not for the civil rights violations committed against her by ADVOCATE.

c.     Making LAWSON whole as to all salary, benefits and seniority status that would have accrued but for the civil rights violations committed by ADVOCATE.

d.     Alternatively, in the event that ADVOCATE is unwilling to reinstate LAWSON, LAWSON should be awarded front pay.

e.       Awarding LAWSON attorney's fees, costs and pre-judgment interest

pursuant to 42 U.S.C. § 2000(e-5)(k).

f.       Awarding LAWSON such other further relief as this Court may

deem appropriate.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

/s/ Joel F. Handler
JOEL F. HANDLER (#1115812)
One E. Wacker Drive, Suite 510
Chicago, Illinois 60601
(312) 832-0008
jhandler@handlerlawgroup.com
Attorney for the Plaintiff,
TERRA LAWSON

6